```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____          │
│ DATE FILED:___10/28/2024___      │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EMILIO RACHEL ESPER KALLAS,

Plaintiff,

-against-

THE G & P AGENCY, INC. et al.,

Defendants.

---

22-CV-08256 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Before the Court is a motion to dismiss by Defendants Mary Freeman and Thomas Ragan (the "Moving Defendants"). For the reasons that follow, the motion is DENIED.

### PROCEDURAL HISTORY AND FACTUAL BACKGROUND[1]

Plaintiff Emilio Kallas ("Plaintiff") filed his original complaint on September 27, 2022, against Defendants Joel Price (an insurance broker) and Price's insurance agency, The G & P Agency ("G & P"). Dkt. No. 1. After substantial discovery, Plaintiff amended the complaint to add Moving Defendants Freeman and Ragan. First Amended Complaint, Dkt. No. 44 ("FAC").

Plaintiff alleges that in 2010, he began working with Ragan, Plaintiff's long-time advisor and an attorney in New York, and with Freeman, Ragan's partner at the law firm Ragan & Freeman, LLP, to create a succession plan for his wife and children. *Id.* ¶¶ 16–17. On the advice of the Moving Defendants, Kallas settled a trust called the Lilly Trust (the "Trust" or the "Lilly Trust"), with the Moving Defendants as the trustees. *Id.* ¶ 17. Ragan subsequently advised Plaintiff that the Trust should purchase and own life insurance, with Kallas as the

---

[1] The facts are drawn from the First Amended Complaint and assumed to be true for purposes of resolving the present motion.

insured. *Id.* ¶ 18.  Ragan introduced Kallas to Price, and on or around February 28, 2014, Price

sold Kallas a policy with the Zurich American Life Insurance Company ("Zurich").  *Id.* ¶¶ 2, 20.

Ragan, Freeman, and Price allegedly participated in selecting Zurich as the insurance

provider.  *Id.* ¶ 20.  Plaintiff alleges that the Moving Defendants knew that in order to qualify for

a life insurance policy with Zurich, Kallas had to show proof of United States situs or proof of

ownership of property or business in the United States at least 12 months prior to the application

(hereinafter, the "Situs Requirement"), and despite knowing that Kallas did not meet these

requirements, they nonetheless helped obtain the life insurance policy from Zurich for the benefit

of the Trust.  *Id.* ¶¶ 3, 20.  In order to circumvent the Situs Requirement, the Defendants first

sent Zurich a certificate of incumbency signed by Ragan of Overlook Miami Beach, LLC

("Overlook"), which stated that Kallas was the principal of Overlook.  *Id.* ¶ 21.  The Moving

Defendants knew the representation—which was a precondition to the issuance of the policy—

was false, because Overlook was an LLC registered in Florida whose sole member was Ragan.

*Id.*  Zurich did not accept the first certificate, so the Moving Defendants allegedly sent Zurich a

certificate of Overlook signed by Freeman stating that Kallas was the registered holder of 50

percent of Overlook's member interests, despite knowing that Kallas had never owned property

in the United States.  *Id.* ¶¶ 3, 22.  Plaintiff alleges he was unaware of the Situs Requirement, and

that he would not have pursued purchasing the policy if he had been aware.  *Id.* ¶ 23.

Plaintiff alleges that, subsequently, Price and G & P, with the knowledge of the Moving

Defendants, pilfered more than $1 million in Trust funds by inducing Plaintiff to send them more

than $2 million to fund the life insurance policy, although only around $1 million was actually

paid to Zurich for the policy.  *Id.* ¶ 2.  Price had informed Kallas that he would need to make ten

payments of $160,000 each per year to maintain the policy, and that no premiums would need to

be paid thereafter; G & P sent Kallas periodic invoices, which Kallas paid directly to G & P.  *Id.*
¶¶ 24–25.  Plaintiff alleges that Ragan was copied on communications concerning the premium
payments, and Ragan and Freeman were copied on "all communications" sent by Zurich
regarding the policy.  *Id.* ¶ 25.  Kallas made what he believed to be the last premium payment in
2019, but, as part of the scheme, was thereafter induced by Price to make several further
payments:  In late January 2020 and again in November 2020, Price informed Plaintiff—copying
Ragan on communications—that Plaintiff would need to make additional payments to keep the
policy in force, causing Kallas to pay an additional $326,000 in 2020 and $209,000 in 2021.  *Id.*
¶¶ 26–27.  In July 2021, Price informed Kallas that he again needed to make additional
payments, and "Price conferred with Thomas and Ragan about the additional payments."  *Id.*
¶ 28.  Kallas made an additional $163,000 in payments in January 2022.  *Id.*  When Price
solicited additional funds in February 2022, again copying Ragan, Kallas investigated and
learned that only around half of the funds he was paying to G & P were sent to Zurich.  *Id.*
¶¶ 29–34.

Plaintiff brought claims against the Moving Defendants for breach of fiduciary duty and
fraud, and the Moving Defendants have moved to dismiss both claims against them for failure to
state a claim.  *See* Dkt. No. 60 ("Defs.' Br.").  The motion is DENIED.

## LEGAL STANDARD

In order to survive a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure
for failure to state a claim, a complaint must plead "enough facts to state a claim to relief that is
plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial
plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

When ruling on a Rule 12(b)(6) motion, the district court must accept all factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, courts are not required to accept as true legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. The court may also consider documents incorporated into the complaint by reference or attached to the complaint as exhibits, or whose terms and effect are relied upon by the plaintiff in drafting the complaint. *See Gryl ex rel. Shire Pharm. Grp. PLC v. Shire Pharm. Grp. PLC*, 298 F.3d 136, 140 (2d Cir. 2002), *cert. denied*, 537 U.S. 1191 (2003).

## DISCUSSION

### I.      Breach of Fiduciary Duty

The Moving Defendants argue that Plaintiff failed to state a claim for breach of fiduciary duty because the Moving Defendants never had the fiduciary duties that Plaintiff alleges were breached, including monitoring payments or raising with Plaintiff discrepancies between the money solicited by Price and the communications from Zurich. Defs.' Br. at 7. They argue that the Trust's governing agreement, by its terms, only required them to distribute to Kallas the principal and net income of Trust assets, and to distribute Trust assets to his beneficiaries after his death. *Id.* at 4, 7–10.

"To determine if a fiduciary relationship exists, 'New York law inquires whether one person has reposed trust or confidence in the integrity and fidelity of another who thereby gains a resulting superiority and influence over the first.'" *Abercrombie v. Andrew Coll.*, 438 F. Supp.

4

2d 243, 274 (S.D.N.Y. 2006) (quoting *Teachers Ins. & Annuity Assoc. of Am. v. Wometco Ent., Inc.*, 833 F. Supp. 344, 349–50 (S.D.N.Y. 1993)).  "While the exact limits of what constitutes a fiduciary relationship are impossible of statement, a fiduciary relationship may be found in any case in which influence has been acquired and abused, in which confidence has been reposed and betrayed." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 196 (S.D.N.Y. 2006) (internal references omitted).  Fiduciary duties generally do not arise where the parties are dealing at arm's length in a business transaction, but a fiduciary relationship may arise under a contract.  *Id.* at 195; *see also Abercrombie*, 438 F. Supp. 2d at 274.  However, contractual relationships are not required; "[r]ather, the ongoing conduct between the parties must be considered." *Pension Comm. of Univ. of Montreal Pension Plan*, 446 F. Supp. 2d at 196 (internal references omitted).

The existence of a fiduciary duty is fact-based and generally not subject to dismissal under Rule 12(b)(6).  *Abercrombie*, 438 F. Supp. 2d at 274; *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 455 (S.D.N.Y. 2012).  To survive a motion to dismiss, the plaintiff "must set forth specific facts constituting the alleged relationship with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship." *Abercrombie*, 438 F. Supp. 2d at 274 (internal references omitted).

Plaintiff alleges that Ragan, an attorney, was his long-time advisor, that the Moving Defendants (both attorneys with expertise in trusts and estates) advised him since 2010 regarding estate planning and he followed their counsel to settle the Lilly Trust, that he worked with Price after being introduced to Price by Ragan, that the Moving Defendants helped procure his life insurance policy by submitting the necessary documents for Zurich to issue the policy, and that the Moving Defendants acted as trustees of the Lilly Trust.  FAC ¶¶ 16–22.  Relationships

between attorneys and clients are classic fiduciary relationships under New York law, as are

trustees in relation to trust beneficiaries. *See, e.g.*, *Abraham v. Leigh*, 471 F. Supp. 3d 540, 569

(S.D.N.Y. 2020) ("A fiduciary relationship exists under New York law when one is under a duty

to act for or give advice for the benefit of another upon matters within the scope of the relation.

Attorney-client relationships are sufficiently rooted in trust and confidence to trigger fiduciary

duties." (internal references and alterations omitted)).  Overall, the facts alleged—involving

long-term relationships of trust in various capacities—are not circumstances involving arm's

length parties in purely business transactions, as typified by the cases cited in the Moving

Defendants' briefs.  Considering all the circumstances, Plaintiff has pled facts sufficient to

support the existence of a fiduciary relationship that encompasses the failures alleged in the First

Amended Complaint.

## II.    Fraud

Plaintiff also pled one cause of action of fraud against the Moving Defendants, alleging

fraud based on their alleged misrepresentations regarding the Situs Requirement and the

premium payments.  "'To state a claim for fraud under New York law, a plaintiff must allege

(1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false;

(3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably

relied; and (5) which caused injury to the plaintiff.'"  *Trahan v. Lazar*, 457 F. Supp. 3d 323, 350

(S.D.N.Y. 2020) (quoting *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402

(2d Cir. 2015)).

With respect to misrepresentations regarding the Situs Requirement, the Moving

Defendants argue that Plaintiff has not alleged an intent to defraud because Kallas himself

wanted the policy.  *See* Defs.' Br. at 18–19.  This argument has no basis in law.  In pleading

fraudulent intent, "a plaintiff must plead facts that: (i) demonstrate the defendant's motive and opportunity to commit or assist in the fraud, or (ii) constitute strong circumstantial evidence of the defendant's conscious misbehavior or recklessness." *Negrete v. Citibank, N.A.*, 237 F. Supp. 3d 112, 123–24 (S.D.N.Y. 2017) (internal references omitted).

Plaintiff adequately alleges that the Moving Defendants advised him to settle the Lilly Trust, and that Ragan advised him to obtain life insurance and introduced him to Price; that the Moving Defendants knew Plaintiff did not meet Zurich's Situs Requirement to qualify for a life insurance policy, and that they submitted false certificates—signed by Ragan and Freeman—to Zurich stating that Kallas was the principal member of and a 50 percent owner of the member interests of Overlook to satisfy the Situs Requirement; and that they omitted to tell Plaintiff about either the Situs Requirement or that they had submitted the false certificates that enabled him to secure a policy that they allegedly knew he was not qualified for.  FAC ¶¶ 3, 19–23.  The fact that Kallas may have wanted a life insurance policy and paid premiums for it has no bearing on the sufficiency of these allegations at this stage.  Nor is it necessary for Kallas to allege that the Moving Defendants intended the eventual embezzlement of premiums or intended to directly benefit from Price's embezzlement.

The Moving Defendants also argue that Plaintiff did not plead loss causation between the alleged fraudulent omissions about the Situs Requirement and Plaintiff's loss because the loss was caused by the alleged embezzlement by Price and G & P.  *See* Defs.' Br. at 22–23.  "Under New York law, an injury is proximately caused if it is the natural and probable consequence of the defrauder's misrepresentation or if the defrauder ought reasonably to have foreseen that the injury was a probable consequence of his fraud." *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1496 (2d Cir. 1992) (internal references omitted).  Issues of proximate cause are often factual

7

issues and require a factual determination that cannot be made at the motion to dismiss stage. *See Trahan*, 457 F. Supp. 3d at 352.

Here, at a minimum, Plaintiff has sufficiently alleged for the purposes of a motion to dismiss that the alleged fraudulent omissions caused Plaintiff to obtain the life insurance policy, which he would not have obtained had he known about the Situs Requirement, *see* FAC ¶ 58, and which caused the alleged loss of money (both in premiums actually transmitted to Zurich for a policy that, unbeknownst to Kallas, was procured by fraud, and in purported "premiums" embezzled by Price). As such, the Court finds that Plaintiff adequately pled fraud. The Court need not address the Moving Defendants' other arguments regarding fraud in connection with alleged misrepresentations about the premium payments.

**CONCLUSION**

For the reasons explained, the motion to dismiss is DENIED. The Clerk of Court is directed to terminate Dkt. No. 60.

Dated:  October 28, 2024
        New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge